Opinion of the Court.
IN 1781, Bartlett Searcy executed to Joshua Hill the following obligation, to wit:
“ Know all men by these presents, that I, Bartlett Searcy, of Fayette county and state of Virginia, have bargained and sold unto Joshua Hill, of the said county and state, two hundred acres of land, lying in said county and on Howard’s creek. The said Hill is to have his choice out of nine hundred acres of land, if in the said two hundred acres of land there shall be water; and if the said Hill shall not like that, he is to have two hundred acres of land, out of a tract claimed by said Searcy, known by the name of the Rock-House, in said county. Wherefore, I, the said Bartlett Searcy, do oblige myself, my heirs, executors, administrators and assigns unto said Joshua Hill, his heirs, executors, administrators and assigns, in the penal sum of ten thousand pounds, currency of Virginia; for which land, I, the said Searcy, have this day received *54 full satisfaction, as witness my hand and seal, this 6th day of April, 1781.
Statement of the case
“ The condition of the above obligation is such, that if the above bound Bartlett Searcy shall make or cause to be made a good and lawful title to the above mentioned two hundred acres of land, unto the said Joshua Hill, so soon as the said Searcy shall obtain his own title from this state, then this obligation to be void ; else to remain in full force and virtue. The day and date above mentioned.
(Signed) BARTLETT SEARCY, [Seal.]"
The tract of land called the Rock-House, was afterwards, in 1785, patented to the said Bartlett Searcy, and he subsequently, in 1790, departed this life, after having made and published his last will and testament. The will was duly admitted to record, and the widow of the testator being named an executrix, took upon herself the execution of the will, and afterwards intermarried with a certain Joseph Reardon. Joseph Reardon caused a settlement to be made of the accounts of the executrix ; and, for some cause, charged the estate with about seventy five pounds, and procured its allowance in the settlement of the accounts. This sum was afterwards transferred by Joseph Reardon, to his brother, Dennis Reardon, (the present appellant,) and he brought suit therefor against the executrix and the heirs of Bartlett Searcy, deceased and finally recovered a judgment at law. A fieri facias was sued out on this judgment, and about one hundred and forty-nine acres, part of the Rock-House tract, was sold by the sheriff, and a deed of conveyance made by the sheriff to the appellant, who was the purchaser.
Under the purchase thus made by the appellant, he took possession of the land ; and the heirs of Bartlett Searcy, deceased, supposing the sale to have been illegal, brought an ejectment against him ; but it was finally decided by this court, that the title passed to the appellant, under the sale and conveyance made by the sheriff.
The heirs of Bartlett Searcy, deceased, then exhibited their bill in equity, and asked, for causes alleged in the bill, a decree against the appellant, to compel him to surrender unto them the title which he held under the sale and conveyance of the sheriff. The court below made a decree, dismissing the bill of the heirs ; *55 but on an appeal to this court, that decree was reversed, and the cause remanded, with directions for a decree to be there pronounced against the present appellant, compelling him to convey the title to the heirs &c.—See 1. Marsh. 1.
After the opinion was rendered by this court, but before any conveyance was made by the present appellant, he exhibited his bill in the circuit court to which the original cause of the heirs against him was remanded.
He charges in his bill, that the bond which was given by Bartlett Searcy in his lifetime, to Joshua Hill, (and which we have already cited,) has never been satisfied ; that it was, in 1784, for a valuable consideration, assigned by Hill to Michael Shirley, who shortly thereafter departed this life, leaving Charles Shirley his legal representative and heir at law; that Bartlett Searcy held no such land on Howard’s creek, as that described in the bond given by him to Hill, and that at the time of Michael Shirley’s death, his son and heir, Charles Shirley, was an infant of tender years; and that within a short time after he arrived at full age, the said Charles applied to the executrix of the estate of said Bartlett Searcy, (whose heirs were also infants,) and made known his election to take the land now in contest, being part of the Rock-House tract, and demanded a title ; that said Charles never obtained a title, and that whilst the suit in chancery, brought by the heirs of Bartlett Searcy, deceased, against the appellant, was depending in this court, the appellant and a certain John H. Slaughter, for a valuable consideration, bought the obligation from Charles Shirley, and obtained his assignment thereon ; that since, the appellant has purchased from Slaughter his interest in the bond, and received his assignment thereon. The bond and assignments thus alleged to have been made, the appellant insists clothes him with a perfect equity to retain the title ; and he charges, that with a knowledge of this equity, a certain Achilles Sneed has purchased and obtained a conveyance from the heirs ; and, after making the said Sneed, the heirs of Bartlett Searcy, his widow, &c. defendants, he prays for a decree to compel them to relinquish their title, and for general relief, &c. Sneed answers the bill, putting the appellant upon the proof *56 of the allegations of his bill ; insisting on the staleness of the bond through which the equity of the appellant is asserted, as a bar to relief, and denying that he had any information of the appellant’s equity, other than vague rumors, in which he placed no confidence, before he purchased and obtained a conveyance from the heirs, &c. The answer of Sneed also charges, that he purchased and obtained a conveyance from one of the children of Bartlett Searcy, deceased, to whom the land was willed; and contends that the title did not pass to the appellant, under the sale and conveyance of the sheriff, made in virtue of a writ of fieri facias against the heirs of Bartlett Searcy, in consequence of the heirs’ having taken nothing by descent from their ancestor, &c. The other answers contain nothing of importance, other than what is contained in the answer of Sneed. They put the appellant on the proof of his equity.
The decision of a court of competent jurisdiction, against the validity of a particular claim to real estate, is evidence against a subsequent purchaser of that claim.
Lands devised may be sold under execution on a judgment obtained against the devisee, as heir at law of the devisor.
On a final hearing, the circuit court pronounced a decree dismissing the appellant’s bill; from which he appealed to this court.
1. We apprehend, the legal title must be admitted to have passed to the appellant, by the sale and conveyance of the sheriff. It was so decided on the trial at law between the heirs of Bartlett Searcy and the appellant; and as that trial was had before Sneed purchased, the decision then given is not only evidence against the heirs, but against Sneed, claiming under them. But, unaided by that decision, we should have no hesitation in maintaining that the title passed, notwithstanding the devise contained in the will of Bartlett Searcy. In consequence of the will, the heirs, it is true, took nothing by descent from their ancestor; but the person to whom the devise was made, was one of the heirs ; and although he did not hold the title as heir, he held it as devisee ; and the legal effect of a sale and conveyance made by the sheriff under a general judgment, is precisely the same, whether the defendant holds the title as heir or devisee. The sale was made by the sheriff under the act of 1792, and according to that act, lands were subject to be sold under writs of fieri facias, in satisfaction of all judgments. It is not, therefore, the character in which the defendants or any of them, held the title, but the judgment, that is to be looked to, in ascertaining the liability of *57 their lands; and as the judgment was general against them, the lands of each and all were subject to its satisfaction. If, then, we are correct in supposing the title passed under the sheriff’s sale and conveyance, it follows, that Sneed cannot avail himself of his alleged purchase without notice ; for it is only where an innocent purchaser obtains the title before notice, that his purchase will be protected in equity ; and as the title was in the appellant at the exhibition of his bill, and, from any thing apparent in this case, at this time also, whatever might otherwise have been the condition of Sneed’s purchase, he cannot, in this contest, stand in the attitude of an innocent purchaser without notice of the appellant’s equity. But it is contended, that the appellant has shown no equity. It is alleged that the bond of Bartlett Searcy, deceased, conferred on Hill merely a right to elect to take the two hundred acres out of the Rock-House tract, a tract containing several hundred acres, all of which had been conveyed to other persons by Bartlett Searcy in his lifetime, except the one hundred and forty nine acres in contest; and it is urged, that having failed to make an election before the conveyance was so made by the decedent, the appellant should not now be permitted to urge his claim, to the prejudice of the devisee under the will of the decedent. The force of the argument, is not, however, perceived by the court. The circumstance of no election being made, until after Bartlett conveyed to others, could not, upon any principle of equity, have prevented Hill from asserting claim to the residue of the tract, not conveyed, if Bartlett were still living ; and the devisee of Bartlett cannot occupy more favorable ground than his testator. The devisee is a mere volunteer; and a volunteer has been always held to hold the estate subject to all the equity to which it was liable in the hands of the person from whom he received it. There cannot be a doubt, but that the bond conferred on Hill a right to select the land in contest; and on making such a selection, unless for some supervenient cause the remedy is defeated, a court of equity ought to enforce a conveyance; for the right to make such a selection is expressly given to Hill by the bond, and the obligation on its face purports to have been given for a valuable consideration received by the decedent, Bartlett. Hill appears, however, to have made *58 no such a selection ; but the obligation has been regularly transferred down to the present appellant, and he not only now asserts claim to the land in contest, but it is proved that Charles Shirley, the heir of Michael Shirley, to whom Hill assigned the obligation, actually elected to take the land in contest, and demanded a conveyance of the title. The election and demand of Charles Shirley, thus made, we suppose, must be considered as attaching a specific equity to the specific tract now in contest; for although Hill made no election, his assignment conferred an interest and an authority to do so, to Michael Shirley, and upon the death of Michael, that interest and authority descended upon his son and heir. Charles Shirley.
Lapse of time does not operate against the holder of a legal title, filing his bill to extinguish an adversary claim to the extent that it does against a complainant filing a bill, demanding a surrender of the legal title from the holder of it.
2. But it is contended, that the lapse of time since the execution of the obligation by Bartlett Searcy to Hill, forms an insuperable objection to the decree sought by the appellant. Here, it should not, however, be forgotten, that the object of the appellant’s bill is not to obtain the specific execution of a contract, from persons holding the legal title. The appellant was himself clothed with the title, and had actually enjoyed the possession of the land for many years; and his application was made to quiet that title and possession. In deciding on the effect of the lapse of time, in the present case, therefore, we should not be governed by those considerations which might have great weight in a case brought to coerce the specific execution of a contract, by compelling the possessor and person having title, to convey, after such a lapse of time. It is barely necessary to enquire, whether there exist such circumstances in the present case, notwithstanding the lapse of time, as are satisfactory to show that the obligation has never been satisfied, and that the appellant is entitled to the beneficial interest therein. And that the bond has, in fact, never been satisfied, we can entertain no reasonable doubt. The only evidence of satisfaction, on which there can be any plausible reliance, consists exclusively in the lapse of time since the execution of the obligation ; and that circumstance, it is conceded, would in itself be sufficient to raise a presumption of satisfaction, were there nothing else in the cause calculated to repel such a presumption.
The presumption which arises from lapse of time, is barely a presumption of fact, which may be repelled by proof of other incompatible facts.
3. But the presumption which arises from the lapse of time, is barely a presumption of fact, and may be repelled by proof of other incompatible facts. Thus, the payment of interest by the obligor, within twenty years prior to the commencement of an action on a bond of upwards of twenty years’ standing, has been held sufficient to repel the presumption of payment, which would otherwise have been inferred from the lapse of time. So, it has been held sufficient to obviate the presumption from lapse of time, to show a demand of the money; and the circumstance of the plaintiff being an alien enemy during part of the time, has also been held sufficient to repel a presumption of payment, after the lapse of twenty years.-Esp. Nisi Prius, 1 vol. Am. ed. 63-4. In the present case, there was not only an application by Charles Shirley, for a title, within twenty years before the commencement of this suit, but he is proved to have been an infant at the death of his father, in 1784, and did not arrive at full age until about 1793 or 1794; and not only so, but the title seems to have been acquired by the present appellant, by his purchase from the sheriff, within less than twenty years from the date of the obligation; and there seems to have been no other land, out of which the obligation could have been discharged, and the personal estate was insufficient to discharge it. These circumstances are abundantly sufficient to show the obligation still remains unsatisfied ; and having come by legal contract, into the hands of the appellant, whilst he held the legal title, we apprehend, it conferred upon him a good cause to resort to a court of chancery, to protect that title, and compel those asserting claim to surrender it.
Upon the whole, we are of opinion that relief should have been decreed the appellant.